UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Anna K., | Case No. 23-cv-549 (TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Martin J. O'Malley, Commissioner of Social Security Administration,[1] | |
| Defendant. | |

---

Edward C. Olson, Reitan Law Office, 80 South Eighth Street, Suite 900, Minneapolis, Minnesota 55318 (for Plaintiff); and

Ana H. Voss, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415; and James Potter, James D. Sides, and Shea Taulbee, Special Assistant United States Attorneys, Social Security Administration, 6401 Security Boulevard, Baltimore, Maryland 21235 (for Defendant).

---

## I.   INTRODUCTION

Plaintiff Anna K. challenges Defendant Commissioner of Social Security's denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401. The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

---

[1] The Court has substituted Commissioner Martin J. O'Malley for Acting Commissioner Kilolo Kijakazi.  A public officer's "successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

1

Pursuant to the Federal Rules of Civil Procedure's Supplemental Rules governing actions seeking judicial review of the Commissioner's decision, this action "is presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS Rule 5. Plaintiff filed a brief, ECF No. 13, requesting the Court to reverse the Commissioner's decision and remand for further review. Defendant filed a brief in opposition, ECF No. 17.

For the reasons set forth below, the Court denies Plaintiff's request for relief and affirms the Commissioner's decision.

## II.   BACKGROUND

In 2020, Plaintiff applied for child's insurance benefits based on disability and for supplemental security income. Tr. 99, 101. In her application, Plaintiff said she was disabled because of generalized anxiety disorder, major depression, post-traumatic stress disorder, bipolar, bilateral hip pain, diabetes, and social anxiety. Tr. 103. The Social Security Administration[2] denied Plaintiff's initial applications. Tr. 99, 101. Plaintiff applied for reconsideration of her applications, and the Social Security Administration again denied her claim. Tr. 159, 161.

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). Tr. 182. At the hearing, the ALJ heard testimony from Plaintiff and from a vocational expert. Tr. 42, 57. The ALJ also considered voluminous medical records in preparing her decision.

---

[2] A Minnesota state agency made the original disability determination on behalf of the Social Security Administration. *See* 20 C.F.R. § 416.1026 (providing funding to state agencies to make disability determinations on behalf of the Social Security Administration).

Tr. 402–1404. These records included a Mental Impairment Questionnaire completed by Dr. Vetter, who is a psychologist, and Ms. Augustin, an intern. Tr. 1398–1403.

After the hearing, the ALJ issued a decision denying Plaintiff's claim. Tr. 13–27. In her decision, the ALJ found that Plaintiff had the residual functional capacity

> to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), as follows. Specifically, [Plaintiff] is able to lift up to 20 pounds occasionally and lift/carry up to 10 pounds frequently. She is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks. She is unable to climb ladders/ropes/scaffolds, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She is unable to tolerate exposure to unprotected heights and use of dangerous moving machinery. She is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes. [Plaintiff] is able to tolerate no direct interaction with the public and only occasional interaction with coworkers.

Tr. 20. Based on this residual functional capacity, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. 26. To make this finding, the ALJ relied on the testimony from the vocational expert that Plaintiff could perform the requirements of an office helper, garment sorter, or non-postal mail clerk. Tr. 26. As a result, the ALJ determined that Plaintiff was not disabled. Tr. 26–27.

Plaintiff requested that the Appeals Council review the decision of the ALJ, and the Appeals Council denied her request for review. Tr. 1.

Plaintiff now seeks review by this Court.

### III. ANALYSIS

3

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Pl.'s Br. at 1, ECF No. 13. Plaintiff specifically contends that the ALJ did not give the proper weight to the medical opinion of R.V. and C.A. and, as a result, made an improper finding as to Plaintiff's residual functional capacity. *Id.* Plaintiff also asserts that the ALJ relied on improper vocational expert testimony when the ALJ found that Plaintiff could perform work that exists in the national economy. *Id.*

### A. Standard of Review

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* at 103. "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see, also*, *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Id.* Rather, reviewing courts reverse an ALJ's decision "only if it falls outside the available zone of choice." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quotation omitted).

### B. Disability Insurance Benefits

4

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. § 423(a)(1); *accord* 20 C.F.R. § 404.315. An individual is considered to be disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment renders the individual unable to do their previous work or "any other kind of substantial gainful work which exists in the national economy," taking into account their age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).

Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 404.1512(a).

### C. Substantial Evidence Supports the ALJ's Finding of Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ did not properly assess her residual functional capacity, contending that the ALJ (1) failed to give proper weight to the medical opinion of Dr. Vetter and Ms. Augustin, (2) did not acknowledge that Plaintiff endorsed symptoms

5

consistent with severe depression on several occasions, and (3) did not give credit to objective testing that shows that Plaintiff has deficits in memory and cognitive functioning. Pl's Br. at 11–12. The Court is not persuaded.

Before the fourth step in the disability determination process, the ALJ assesses the claimant's residual functional capacity. *Id.* § 404.1545(a)(5)(i). The residual functional capacity is the most work a claimant can do despite their limitations. *Id.* § 404.1545(a)(1). The ALJ assesses a claimant's residual functional capacity "based on all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3). If a claimant has a severe impairment, but the impairment is not a listed impairment, the ALJ must "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining . . . residual functional capacity." *Id.* § 404.1545(e). To make this determination on the total limiting effects of the claimant's impairments, the ALJ considers "all of the medical and nonmedical evidence, including the information described in § 404.1529(c)." *Id.*

Section 404.1529(c) applies "[w]hen the medical signs or laboratory findings show that [the claimant] has a medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms." If that is the case, the ALJ must consider both "objective medical evidence" as well as "any other information [the claimant] may submit about [the claimant's] symptoms." 20 C.F.R. § 404.1529(c). For other information that the claimant submits,

> [b]ecause symptoms . . . are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [the claimant's] medical or nonmedical sources report, which can reasonably be accepted as consistent with the

6

> objective medical evidence and other evidence, will be taken into account as explained in [20 C.F.R. § 404.1529](c)(4).

20 C.F.R. § 404.1529(c)(3). Paragraph (c)(4) provides that the ALJ must "consider" all of the available evidence, including whether there are any inconsistencies in the evidence.

In addition, the Social Security Administration has promulgated rules on how the ALJ considers medical opinions. The ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, the ALJ considers five factors in evaluating the medical opinions: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). The most important factors are supportability and consistency. *Id.* § 404.1520c(b)(2). The ALJ must explain how they considered the supportability and consistency factors but is not required to explain how they considered the other three factors. *Id.*

For the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). And for the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

None of Plaintiff's three arguments convince the Court that the ALJ's finding was unsupported by substantial evidence. First, contrary to Plaintiff's assertion, the ALJ was "not required . . . to explain how [she] considered" Dr. Vetter and Ms. Augustin's examining and treating relationship with Plaintiff because the regulations only require explanation of the supportability and consistency factors and do not require explanation of the relationship factor. 20 C.F.R. § 404.1520c(b)(2); *contra* Pl's Br. at 11. Moreover, the ALJ properly discredited the report of Dr. Vetter and Ms. Augustin following the requirements of the regulations. For the supportability factor, the ALJ found that the report was "partially unsupported as it acknowledges the information the claimant provided was either internally inconsistent or insufficient to allow the providers to assess certain aspects of her functioning and as these providers had seen the claimant on no more than a few occasions." Tr. 24–25. The record supports this finding. In their report, Dr. Vetter and Ms. Augustin responded "no" to a question asking whether Plaintiff's impairments were "reasonably consistent with the symptoms and functional limitations described in this evaluation." They explained that Plaintiff's "verbal reports and assessments were inconsistent (i.e. indicated difficulties concentrating on intake but not on PHQ-9)." Tr. 1403. When asked to "describe any additional reasons not covered above why [Plaintiff] would have difficulty working at a regular job on a sustained basis," Dr. Vetter and Ms. Augustin answered, "Have not met with [Plaintiff] for long enough to determine this." Tr. 1403. To the question, "Is your patient a malingerer?" they wrote, "Not enough information provided." Tr. 1403. For, "[H]ow often do you anticipate that [Plaintiff's] impairments or treatment would cause [Plaintiff] to be absent from work?" Dr. Vetter and Ms. Augustin replied, "[Plaintiff] did

not provide enough information. However, [Plaintiff] has not been consistent with therapy appointments." Tr. 1403. And to "Does [Plaintiff's] mental health preclude them from working with the general public?" Dr. Vetter and Ms. Augustin responded, "Not enough information provided." Tr. 1403.

> For the consistency factor, the ALJ found that the conclusions of the medical opinion
>
>> are inconsistent with the remaining evidence since, unlike at the December 2021 psychological evaluation, the claimant's 2021 treatment notes show she experienced such improvement in her symptoms that she had been considering discontinuing services; similarly, the mental status findings in the remaining mental health records are somewhat inconsistent with the limitations endorsed in this medical opinion report.

Tr. 25. This too is supported by the record. Treatment notes show that in 2019 Plaintiff had symptoms of major depressive disorder and was "struggling to manage her mental health symptoms." Tr. 453, 460. In 2020, treatment notes state that Plaintiff was doing progressively better: her medications were helping her manage her symptoms, her anxiety was present but manageable, and she reported that she was doing "good." Tr. 499–500, 1320–21, 1325–26. By 2021, treatment notes state that Plaintiff's symptoms had greatly reduced and that Plaintiff reported "that she [was] not sure that she needs ongoing case management as she [was] feeling that she [was] doing well." Tr. 1330, 1335. The record supports the ALJ's finding that the report of Dr. Vetter and Ms. Augustin lacked supportability and consistency and was therefore not persuasive.

Second, the ALJ properly considered that "Plaintiff endorsed symptoms consistent with severe depression at multiple examinations." Pl.'s Br. at 12. Importantly, "an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d

9

959, 966 (8th Cir. 2010) (quotation omitted). And "an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* (quotation omitted). The ALJ stated that Plaintiff's "medical records describe longstanding problems with . . . depression." Tr. 21. The record reflects this, showing that Plaintiff did report symptoms consistent with moderate to severe depression. Tr. 543, 558, 569, 573, 966, 981, 1056, 1269, 1275. And as a result, the ALJ included significant limitations based on these symptoms in Plaintiff's residual functional capacity, explaining,

> [Plaintiff's] medical records, considered together with her testimony, support moderate limitations in the "paragraph B" criteria of understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace. In all, these circumstances are consistent with the above-specified limitations in terms of the complexity and familiarity of tasks, pace and productivity demands, decision-making responsibility, stability of the work setting, and interpersonal contacts, especially with unfamiliar members of the general public. They also suggest [Plaintiff's] mental impairments contribute to her environmental tolerances, particularly her need to avoid work at unprotected heights or using dangerous moving machinery.

Tr. 22. In short, the ALJ clearly considered the Plaintiff's depression symptoms in making her finding of Plaintiff's residual functional capacity and, moreover, was not required to discuss those specific symptoms to show that she considered that evidence. *See Wildman*, 596 F.3d at 966.

Third, the ALJ properly considered objective medical evidence that Plaintiff has deficits in memory and cognitive functioning. The ALJ found that "[w]hile [Plaintiff] has been diagnosed with an intellectual developmental disorder since the alleged onset date, reports of earlier academic testing are more suggestive of borderline or low-average

abilities." Tr. 23. The ALJ added, "Mental status findings, moreover, suggest [Plaintiff's] reported difficulties with attention, concentration, comprehension, and social functioning, are not so severe as to preclude her performance of work within the above residual functional capacity, with abnormal findings mostly constrained to mood- and affect-related observations and 'fair' insight and judgment." Tr. 23. This finding is supported by the record.

A report from middle school stated that "[Plaintiff's] academic skills and fluency with academic tasks are both within the average range. Her academic knowledge and ability to apply academic skills are both within the low average range." Tr. 913. The report also stated, "[Plaintiff's] performance is average in basic reading skills, reading comprehension, written language and written expression; and low average in math calculation skills and math reasoning." Tr. 913. A diagnostic assessment in 2019 reported that her intelligence was "[h]igh," her immediate memory and remote memory were "[i]ntact," and in general, her mental functioning was "accurate." Tr. 453. The same report stated that her thought process was "[l]ogical & organized." Tr. 453. A 2020 diagnostic assessment stated that her attention, concentration, and "fund of knowledge" were "sufficient." Tr. 459. And, at a 2021 medication management visit, the provider reported that Plaintiff's thought process was "[l]inear, coherent, but concrete." Tr. 1335.

The record amply supports the ALJ's finding on Plaintiff's mental abilities for Plaintiff's residual functional capacity. The Court notes that "the ALJ is not required to explicitly reconcile every conflicting shred of medical evidence." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (quotation omitted). More importantly, the fact that a

11

different conclusion as to Plaintiff's residual functional capacity could be drawn from the evidence does not merit reversal. *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.").

Overall, substantial evidence supports the ALJ's finding of Plaintiff's residual functional capacity. Reversal is not warranted based on the ALJ's finding of Plaintiff's residual functional capacity because it falls in the "zone of choice" created from the record. *Kraus*, 988 F.3d at 1024.

### D. Substantial Evidence Supports the ALJ's Finding That Work Exists That Plaintiff Can Perform

Plaintiff next argues that substantial evidence does not support the ALJ's findings on Plaintiff's vocational abilities. She specifically asserts that the ALJ (1) posed a deficient hypothetical question, (2) did not reconcile a conflict between the Dictionary of Occupational Titles and the vocational expert's testimony, and (3) incorrectly found that a significant number of jobs that Plaintiff can perform exist in the national economy. The Court is not convinced.

At the fourth and fifth steps, ALJs commonly use vocational experts to provide evidence about the claimant's ability to do their past work or to do other work that exists in the national economy. 20 C.F.R. § 404.1560. "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such

individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). At the hearing on a claimant's application for benefits,

> a vocational expert . . . may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work . . . as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2). Vocational experts often rely on specialized resources, such as the Dictionary of Occupational Titles, published by the U.S. Department of Labor, to determine what work a claimant may be able to perform, given the claimant's limitations. *See id.* "A vocational expert's testimony based on a properly phrased hypothetical question constitutes substantial evidence," but "if . . . the vocational expert's testimony appears to conflict with the job requirements set forth in the relevant DOT listings and the ALJ did not resolve the conflict, the vocational expert's testimony is not substantial evidence to support a denial of benefits." *Galloway v. Kijakazi*, 46 F.4th 686, 689 (8th Cir. 2022).

Plaintiff's first argument as to the ALJ's vocational findings is that ALJ's hypothetical question was deficient. Tr. 14. Plaintiff's contention here relies on her argument above that substantial evidence did not support the ALJ's finding of her residual functional capacity. The ALJ based her hypothetical question on her formulation of Plaintiff's residual functional capacity. Tr. 59–60. Because the residual functional capacity was not properly articulated, Plaintiff asserts, the ALJ's hypothetical question was deficient. Tr. 14.

But, as this Court determined above, substantial evidence does support the ALJ's finding on Plaintiff's residual functional capacity. Therefore, the vocational expert's testimony was substantial evidence on which the ALJ could properly rely in making her finding on Plaintiff's vocational abilities. *See Gann v. Berryhill*, 864 F.3d 947, 952 (8th Cir. 2017) (stating that "testimony from a vocational expert constitutes substantial evidence" when it is "based on a properly phrased hypothetical question" (quotation omitted)).

Plaintiff's second argument is that substantial evidence did not support the ALJ's findings of potential jobs that Plaintiff could perform. According to Plaintiff, the descriptions in the Dictionary of Occupational Titles of the jobs identified by the vocational expert conflicted with certain limitations in the ALJ's hypothetical question. Pl.'s Br. at 17. The ALJ has "an affirmative responsibility to ask about any possible conflict between VE evidence and the DOT, and to obtain an explanation for any such conflict, before relying on VE evidence to support a determination the claimant is not disabled." *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014) (quotation omitted); *see also* Social Security Ruling, SSR 00-4p., 65 Fed. Reg. 75759, 75759–61 (Dec. 4, 2000).

Among other limitations, the ALJ's hypothetical question stated that the individual could perform "simple routine and repetitive tasks in a work environment free of fast paced production requirements involving only simple work-related decisions and routine workplace changes." Tr. 60. In response, the vocational expert identified the occupations of office helper, garment sorter, and non-postal mail clerk. Tr. 60.

According to the Dictionary of Occupational Titles, office helper and garment sorter require "Level 2" reasoning, defined as the ability to "[a]pply commonsense understanding

14

to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Officer Helper*, DICOT 239.567-010, 1991 WL 672232; *Garment Sorter*, DICOT 222.687-014, 1991 WL 672131. And according to the Dictionary of Occupational Titles, non-postal mail clerk requires "Level 3" reasoning, defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Mail Clerk*, DICOT 209.687-026, 1991 WL 671813.

There is no conflict between the limits in the hypothetical question and the reasoning required for the jobs identified by the vocational expert. Both level two and level three reasoning require only "commonsense understanding" to carry out "instructions." For level two reasoning, the instructions must be "uninvolved." These correspond to the hypothetical question's limitation of "simple routine and repetitive tasks." Tr. 60. And both level two and level three reasoning require an individual to deal with problems involving "concrete variables in or from standardized situations." This corresponds to the hypothetical question's limitation of "simple work-related decisions." Tr. 60. Moreover, the reasoning levels provided in the Dictionary of Occupational Titles "are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (quotation omitted). In addition, precedent from the Eighth Circuit establishes that "[t]he failure to address any potential inconsistency between the [residual function capacity's] limitation to simple, routine, repetitive work and the [Dictionary of Occupational Title's] requirement of level

15

three reasoning does not require a remand." *Welsh*, 765 F.3d at 930. Because there is no conflict between the limitations in the hypothetical question and the requirements of level two and three reasoning, the ALJ relied on proper testimony from the vocational expert in making her findings.

Plaintiff's third and final argument as to the vocational testimony is that substantial evidence did not support the ALJ's finding that a significant number of jobs exist in the national economy that Plaintiff could perform. Pl.'s Br. at 17. The vocational expert opined that there existed nationally 35,000 office helper positions, 53,000 garment sorter positions, and 60,000 non-postal mail clerk positions, Tr. 60, a total of 148,000 positions. Plaintiff argues that the record contains no evidence of how many of those jobs exist in Minnesota. Pl.'s Br. at 17.

In the disability context, "'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). It is not limited to work in the immediate area where a claimant lives. *See* 42 U.S.C. § 423(d)(2)(A) ("regardless of whether such work exists in the immediate area in which he lives"). Additionally, the regulations provide that "isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered 'work which exists in the national economy.'" 20 C.F.R. § 404.1566(b). Accordingly, a claimant will not be denied benefits on the existence of such isolated jobs. *Id.*

The Eighth Circuit "ultimately leave[s] to the trial judge's common sense the application of the significant numbers requirement to a particular claimant's factual

16

situation." *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997). As several courts have observed, there is a split among the district courts "within the Eighth Circuit on how to take this 'common sense' approach." *Shari B. v. Kijakazi*, No. 22-cv-1539, 2023 WL 6130679, at *8 (D. Minn. Sept. 19, 2023); *see, e.g., Alice T. v. Kijakazi*, No. 8:21CV14, 2021 WL 5302141, at *16-17 (D. Neb. Nov. 15, 2021) (discussing split); *Hayden v. Saul*, No. 4:19-CV187-SPM, 2020 WL 888002, at *10-11 (E.D. Mo. Feb. 24, 2020) (same); *see also, e.g.*, *Karen E. v. Kijakazi*, No. 21-cv-3015, 2022 WL 17548642, at *5-6 (N.D. Ia. Sept. 15, 2022); *Evert v. Kijakazi*, No. 3:21-cv-6, 2022 WL 1749611, at *6-7 (D. N.D. Feb. 17, 2022).

Consistent with the approach urged by Plaintiff, courts in the District of South Dakota "ha[ve] repeatedly held that [vocational expert] testimony solely concerning national numbers for DOT occupations is insufficient to carry the Commissioner's burden at step five of the sequential analysis; there must be direct evidence of a significant number of jobs either in the claimant's 'region' or in 'several regions.'" *Alice T.*, 2021 WL 5302141, at *16.

Other courts, including those in the Eastern District of Missouri, the Northern District of Iowa and the District of North Dakota have "taken a more pragmatic approach and held that 'evidence of jobs existing nationally does constitute evidence of work existing in several regions of the country, at least where there is nothing in the number of jobs or the nature of the jobs identified to indicate that those jobs would exist only in limited numbers in isolated regions of the country.'" *Alice T.*, 2021 WL 5302141, at *17 (quoting *Hayden*, 2020 WL 888002, at *10-12); *see, e.g., Evert*, 2022 WL 1749611, at *7; *see also*

17

*Karen E.*, 2022 WL 17548642, at *5-7. As noted in *Shari B.*, "[a]t least one court in the District of Minnesota has held that 20,500 jobs in the national economy constitutes a significant number." 2023 WL 6130679, at *8 (citing *Nicolas C. J. v. Kijakazi*, No. 20-cv-1340 (WMW/ECW), 2022 WL 1109810, at *25 (D. Minn. Jan. 20, 2022), *report and recommendation adopted*, 2022 WL 807605 (D. Minn. Mar. 17, 2022)). *Shari B.* went on to point out that, "[b]ased on [its] survey of case law from across the country, many courts appear to draw the line between a 'significant' and an insignificant number of jobs in the national economy—without evidence of the number of jobs available locally—at around 20,000 jobs." *Id.*

Again, the Eighth Circuit has emphasized a commonsense approach with respect to the significant-numbers requirement. *See, e.g.*, *Hall*, 109 F.3d at 1259. In total, the vocational expert testified that there were 148,000 jobs available to Plaintiff. This number far exceeds national numbers of jobs held by other circuit appellate courts to be sufficient to meet the Commissioner's burden at step five. *See, e.g.*, *McCall v. Saul*, 844 F. App'x 680, 681-82 (4th Cir. 2021) (81,000 jobs nationally); *Moats v. Commissioner of Social Security*, 42 F.4th 558, 563 (6th Cir. 2022) (32,000 jobs nationally); *Milhem v. Kijakazi*, 52 F.4th 688, 696-97 (7th Cir. 2022) (89,000 jobs nationally); *cf. Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003) (75,000 jobs nationally); *see also Gutierrez v. Comm'r of Soc. Security*, 740 F.3d 519, 529 (9th Cir. 2014) ("A finding of 25,000 jobs likely does not fall into the category of 'isolated jobs' existing in 'very limited numbers.'"). And importantly, nothing in the nature of the jobs of office helper, garment sorter, and non-postal mail clerk suggests that those jobs exist only in isolated regions of the country.

Like other courts, this Court agrees "it would have been preferable for the ALJ to elicit testimony from the [vocational expert] regarding regional numbers." *Alice T.*, 2021 WL 5302141, at *17; *see also, e.g., Evert*, 2022 WL 1749611, at *7; *Hayden*, 2020 WL 888002, at *12. Nevertheless, considering the Eighth Circuit's approach to the significant-numbers requirement and the fact that substantial evidence is "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion," *Biestek*, 139 S. Ct. at 1154 (quotation omitted), the Court concludes the vocational expert's testimony that there are 148,000 jobs nationwide in response to the ALJ's hypothetical constitutes substantial evidence to support the conclusion that there are a significant number of jobs in the national economy which Plaintiff can perform.

In sum, substantial evidence supports the ALJ's overall determination that Plaintiff was not disabled because the ALJ made a proper finding of Plaintiff's residual functional capacity and because the ALJ relied on adequate testimony from the vocational expert.

## IV. CONCLUSION

Based upon the foregoing and all the files, records, and proceedings in the above-captioned matter, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's request for relief, ECF No. 13, is **DENIED**; and

2. The ALJ's decision is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: September 25, 2024                /s/ *Tony N. Leung*
                                        Tony N. Leung
                                        United States Magistrate Judge
                                        District of Minnesota

                                        *Anna K. v. O'Malley*
                                        Case No. 23-cv-549 (TNL)